UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| AARON R. SARA and | ) |
| JULIE A. SARA, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:11 CV 94 |
| | ) |
| GLOBEX CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Defendant Globex Corporation has moved for summary judgment on plaintiffs Aaron and Julia Sara's claims against it. (DE # 64.) Plaintiffs have filed a response (DE # 66), and defendant has filed a reply (DE # 67). For the following reasons, defendant's motion is granted.

**I.    Facts and Background**

In the summary that follows, the court refers only to undisputed facts, or, if there is a dispute, notes that it exists and relies on the version of the fact, or inference therefrom, that is most favorable to the plaintiffs. This summary provides an overview. Additional relevant undisputed facts will be referred to in the analysis that follows.

Defendant is an Ohio Corporation and engineering firm that specializes in diagnostic inspections of mill buildings. (DE # 65 at 4.) U.S. Steel, which is not a party in this suit, owns and operates a steel plant in Gary, Indiana. (*Id.*) At this plant, U.S. Steel owns and operates a structure known as the Hi-Line Transfer Trestle ("the Trestle").

(*Id.*) Defendant contracted with U.S. Steel to provide inspection services for the Trestle. (*Id.*; DE # 64-2 at 1; Stanic Aff. at ¶ 2.)

Defendant maintained an office at U.S. Steel's Gary plant. (DE # 66 at 1; DE # 66-1 at 95; Lee Dep. at pp. 11:16-12-1.) Defendant had several employees present at U.S. Steel's Gary plant on a daily basis in order to perform regular inspection work and defendant also had employees that were on call if any emergencies came up. (DE # 66 at 1; DE # 66-1 at 95; Lee Dep. at pp. 11-13.) The business that defendant received from U.S. Steel accounted for approximately forty percent of its annual revenue. (DE # 66-1 at 37-38; Stanic Dep. at pp. 20:20-21:2.)

When defendant inspected structures for U.S. Steel, defendant was able to assign a "repair category" to the issues that defendant found needed to be addressed. (DE # 66-1 at 96; Lee Dep. at pp. 23:2-11.) A category one repair was used when defendant believed that immediate repairs were necessary to avoid catastrophic failures. (DE # 66-1 at 96; Lee Dep. at pp. 23:2-11.) Even if defendant issued a category one repair, however, it did not result in the Trestle being shut down immediately or shut down at all. U.S. Steel was the only decision maker with regard to shutting down the Trestle or making repairs. (DE # 64-3 at 44; DE # 68-2 at 8; Stanic Dep. at p. 46:11-22; DE # 68-2 at 12-13; Stanic Dep. at pp. 54:23-55:12; DE # 64-3 at 29-30; Cornelius Dep. at pp. 62:15-63:12.)[1]

---

[1] In their response brief, plaintiffs assert that if defendant issued a category one repair, U.S. Steel would immediately be required to stop using the Trestle and make the suggested repairs. (DE # 66 at 2.) The portions of the record that plaintiffs cite for this

2

U.S. Steel maintains a Safety Guide Procedure, which provides general safety procedures for its plants, and specifically provides for "general" and "detailed" inspections of U.S. Steel property. (DE # 65 at 4-5; DE # 64-3 at 11-12; Cornelius Dep. at pp. 11:15-24, 13:9-25.) The Safety Guide Procedure defines a "general" inspection as follows:

> This inspection shall include a review of previous inspections to monitor the condition, progress or repair of significant deficiencies. It shall include a visual inspection of important main members and connections for loose rivets, cracked welds and reduced, corroded or broken members. When obvious signs of distress are observed, sufficient detailed surveys, etc., shall be made to determine the cause and to indicate if a Detailed Inspection is required for all or part of the structure.

(DE # 64-3 at 41.)

U.S. Steel issued work orders for the Trestle using a system called "Passport," and no work on the Trestle, including inspections, could be performed

---

proposition, however, do not actually support this assertion. First, plaintiffs cite to pages 46 and 55 of Gradimir Stanic's (defendant's president) deposition. (DE # 66-1 at 49, 53.) While parts of Stanic's testimony would support plaintiffs' assertion in isolation, if those pages of the deposition are read in their entirety, it is clear that defendant did not have authority to order U.S. Steel to make immediate repairs or to shut down the Trestle.

Plaintiffs also cite to the deposition of Kai Lee, one of defendant's former engineers. Once again, however, the portions of Lee's deposition plaintiffs cite to support their assertion do not actually indicate that defendant had the authority to require U.S. Steel to either make immediate repairs or to shut down the Trestle. In his deposition, Lee testifies that a category one repair indicates that immediate repairs are needed in order to avoid a catastrophic failure. (DE # 66-1 at 96; Lee Dep. at p. 23:9-11.) Lee then goes on to testify that in his role as one of defendant's employees, he had no authority to shut down the Trestle if he believed a catastrophic failure was going to occur. (DE # 66-1 at 100; Lee. Dep. at pp. 39:1-40:4.) Lee made very clear that even in a category one situation, U.S. Steel had the sole authority regarding whether to make the suggested repairs or shut down the Trestle. (DE # 66-1 at 100; Lee. Dep. at pp. 41:1-19.)

3

without a work order from U.S. Steel. (DE # 65 at 5; DE # 64-3 at 17, 25; Cornelius Dep. at pp. 28:14-23, 52:22-25; DE # 64-4 at 20-21; Stanic Dep. at pp. 78:24-79:3.) In 1991, U.S. Steel requested that defendant prepare a proposal to conduct a structural inspection program according to the U.S. Steel Safety Guide Procedure at U.S. Steel's Gary, Indiana plant. (DE # 65 at 5; DE # 64-3 at 10-11; Cornelius Dep. at pp. 10:19-11:4.) U.S. Steel accepted defendant's proposal, and defendant and U.S. Steel agreed that defendant would perform a general inspection of the Trestle every five years. (DE # 64-2 at 1; Stanic Aff. at ¶ 2.) The U.S. Steel Safety Guide Procedure only required a general inspection of the Trestle every five years. (DE # 65 at 5; DE # 64-3 at 13; Cornelius Dep. at p. 14; DE # 64-3 at 38.)

Defendant performed its first general inspection of the Trestle in 1995. (DE # 65 at 6; DE # 64-2 at 1; Stanic Aff. at ¶¶ 2, 4; DE # 64-4 at 25; Stanic Dep. at p. 25:19-23.) Following that inspection, defendant issued a recommendation to U.S. Steel to issue a work order that would give defendant the permission to conduct a detailed inspection of the Trestle. (DE # 65 at 6; DE # 64-3 at 14; Cornelius Dep. at p. 22:5-23; DE # 64-3 at 50.) The recommendation also noted that the Trestle had "numerous deteriorated and cracked structural members." (DE # 66-1 at 61.) U.S. Steel, however, refused to give defendant permission to do a more detailed inspection. (DE # 64-4 at 11; Stanic Dep. at p. 22:6-19.) After the initial inspection, defendant became concerned that U.S. Steel would not allow it to perform a more detailed inspection, despite the problems

4

defendant had identified in its report. (DE # 66-1 at 38; Stanic Dep. at 21:23-25; DE # 64-4 at 11; Stannic Dep. at 22:1-12.)

In November of 1997, defendant informed U.S. Steel that when defendant reports that a detailed inspection is needed, U.S. Steel officials should take "immediate action." (DE # 66-1 at 55-56; Stanic Dep. at 62:3-63:22; DE # 66-1 at 88.) Defendant continued to let U.S. Steel know that detailed inspections were necessary, but did not want to push the issue too hard out of fear that U.S. Steel would consider defendant's actions to be soliciting new business. (DE # 66-1 at 39-40; Stannic Dep. at 24:6-25:3.)

Defendant next completed an inspection of the Trestle in 2000. (DE # 64-3 at 15; Cornelius Dep. at p. 23:6-15; DE # 64-3 at 51; DE # 64-4 at 13-14; Stanic Dep. at pp. 25:24-26:2.) On the first page of defendant's 2000 inspection report to U.S. Steel, defendant noted that there were several areas of the Trestle that were inaccessible to defendant, including the area of the Trestle containing bent numbers 136 ½ to 150 ½.[2] (DE # 64-3 at 51.) In defendant's 2000 report to U.S. Steel, defendant once again recommended that U.S. Steel allow defendant to do a detailed inspection of the Trestle, highlighting the areas that were not accessible during the general inspection.[3] (*Id.*; DE # 64-3 at 15;

---

[2] "Bents are the vertical support columns along the structure, and numbered along the Trestle." (DE # 65 at 6 n.4.)

[3] In their response brief, plaintiffs point out that there is no evidence defendant asked for U.S. Steel's permission to get additional access to the areas of the Trestle that were not accessible. (DE # 66 at 3.) In its report, however, defendant clearly identified the areas of the Trestle that were inaccessible and requested permission to do a detailed inspection of the Trestle. (DE # 66-1 at 62.)

Cornelius Dep. at p. 23:6-15.) U.S. Steel once again did not allow defendant to perform the detailed inspection that defendant had recommended. (DE # 65 at 6; DE # 64-2 at 1; Stanic Aff. at ¶¶ 10-11.)

Defendant's 2000 inspection of the Trestle complied with all requirements for a general inspection under the U.S. Steel Safety Guide Procedure. (DE # 64-3 at 19; Cornelius Dep. at p. 35:19-22.) The only thing that defendant was expected or permitted to do with regard to the 2000 inspection was to make recommendations to U.S. Steel based on defendant's visual examination of the Trestle. (DE # 64-3 at 25-26; Cornelius Dep. at pp. 52:19-53:11.) U.S. Steel did not expect defendant to recommend any corrosion protection plan after the 2000 inspection. (DE # 64-3 at 28; Cornelius Dep. at p. 55:14-25.)

The next general inspection of the Trestle was scheduled for 2005, but U.S. Steel canceled the inspection and defendant did not inspect the Trestle. (DE # 65 at 7; DE # 64-2 at 1; Stanic Aff. at ¶ 6.) Because U.S. Steel cancelled the inspection, the next opportunity that defendant would have to inspect the Trestle was in 2010. (DE # 64-2 at 1; Stanic Aff. at ¶ 6.)

From 2000 to 2009, defendant performed several emergency inspections of the Trestle. (DE # 66 at 3; DE # 66-1 at 48; Stanic Dep. at 45:13-22.) During these emergency inspections, defendant made no attempt to gain access to the areas of the Trestle that were previously inaccessible because the Trestle was accessible for only the specific

purpose that prompted the emergency inspection. (DE # 66-1 at 51; Stanic Dep. at 53:4-11.)

Kai Lee, one of defendant's former engineers employed from 2005 to 2010, was one of several of defendant's employees responsible for inspecting the Trestle during that time period. (DE # 66-1 at 94; Lee Dep. at p. 10:3-25.) On August 27, 2007 Lee performed an emergency inspection of the Trestle after bent number 127 had buckled, and Lee concluded that the Trestle's condition "wasn't too good" because it was eroding. (DE # 66-1 at 51-52; Stanic Dep. at pp. 53:15-54:19; DE # 66-1 at 97; Lee Dep. at pp. 27:23-28:11.)

In 2009, Lee recommended that U.S. Steel "perform thorough repairs" to the Trestle and noted that additional defects, including "severe material loss," might be uncovered upon repair. (DE # 66-1 at 102.) Lee also informed U.S. Steel that leaving the Trestle unattended was like "sitting on time bombs." (*Id.*) In 2010, Michael Kaluzny, a U.S. Steel mechanical inspector, inspected the Trestle and could see that nine beams supporting the Trestle were rotted out. (DE # 66-1 at 33; Kaluzny Dep. at pp. 49:15-50:6.)

In November 2007, plaintiff Aaron Sara was hired as an employee of U.S. Steel. (DE # 64-5 at 10; Sara Dep. at p. 9:18-19.) On July 7, 2010 plaintiff Aaron Sara was driving a transfer car on the Trestle when it collapsed and Sara was injured. (DE # 65 at 7.) The area of the collapse occurred on the Trestle between bent numbers 138 ½ to 143 ½. (*Id.*; DE # 64-3 at 80.) Prior to the date of Aaron Sara's accident, defendant had never been given access to the area in which the accident occurred – between bent numbers

138 ½ to 143 ½. (DE # 64-2 at 2; Stanic Aff. at ¶¶ 9-11.) During each of the general inspections that defendant performed on the Trestle, the area of the Trestle where the accident took place was never accessible to defendant. (DE # 64-2 at 2; Stanic Aff. at ¶¶ 9-11.)

Prior to the date of the accident, U.S. Steel had actual knowledge that the area of the Trestle that collapsed was in need of repair, and had scheduled the repair for that area to take place on July 8, 2010, the day after Aaron Sara's accident. (DE # 64-3 at 21-22; Cornelius Dep. at pp. 45:13-46:13; DE # 64-3 at 76.) U.S. Steel had sole decision-making authority with regard to the Trestle. Thus, only U.S. Steel had authority to make decisions regarding whether to make recommended repairs to the Trestle, whether to allow a detailed inspection of the Trestle, and whether there would be an inspection and what type of inspection would occur. (DE # 64-3 at 29-30; Cornelius Dep. at pp. 62:15-63:12.) A U.S. Steel investigation into the accident concluded that if defendant had been allowed access to the area in which the accident occurred during any of defendant's previous inspections, the accident would not have occurred. (DE # 64-3 at 24; Cornelius Dep. at p. 48:17-24; DE # 64-3 at 75.)

Plaintiffs filed suit against defendant alleging negligence and loss of consortium as it relates to plaintiff Julie Sara. (DE # 36.) Defendant has now moved for summary judgment on plaintiffs' claims. (DE # 64.)

## II. Legal Standard

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

### III. Analysis

Defendant argues that plaintiffs' negligence claim fails because plaintiffs cannot establish that defendant owed plaintiff Aaron Sara a duty of care. (DE # 65 at 11.) Under Indiana law, a negligence claim requires proof of three elements: "(1) a duty on the part of defendant in relation to the plaintiff; (2) failure on the part of defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Miller v. Griesel*, 308 N.E.2d 701, 706 (1974). In order to determine whether a common law duty of care exists under Indiana

law, a court must balance three factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind. 1991); *see also Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 643 (7th Cir. 2015).

Plaintiffs, however, do not contend that defendant owed Aaron Sara a duty of care under the three-factor test set out in *Webb*. Instead, plaintiffs argue that defendant assumed a duty of care to plaintiff Aaron Sara. (DE # 66 at 7-8); *Hous. Auth. of City of S. Bend v. Grady*, 815 N.E.2d 151, 158-61 (Ind. Ct. App. 2004); *see also Lodholtz*, 778 F.3d at 645. The Indiana Court of Appeals has summarized the assumed duty of care as follows:

> Section 324A of the Restatement (Second) of Torts parallels Indiana's doctrine of assumed duty. *Auler v. Van Natta,* 686 N.E.2d 172, 175 (Ind.Ct.App.1997), *trans. denied.* Section 324A provides:
>
>> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>>
>> (a) his failure to exercise reasonable care increases the risk of such harm, or
>>
>> (b) he has undertaken to perform a duty owed by the other to the third person, or
>>
>> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
>
> The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent

11

person. *Delta Tau Delta, Beta Alpha Chapter v. Johnson,* 712 N.E.2d 968, 975 (Ind.1999). The existence and extent of such duty is ordinarily a question of fact for the trier of fact. *Id.* However, when the record contains insufficient evidence to establish such a duty, the court will decide the issue as a matter of law. *Id.*

*Ward v. First Indiana Plaza Joint Venture*, 725 N.E.2d 134, 136 (Ind. Ct. App. 2000); *see also Medtronic, Inc. v. Malander*, 996 N.E.2d 412, 419-20 (Ind. Ct. App. 2013).

Plaintiffs argue that defendant assumed a duty of care to plaintiff Aaron Sara under sections (a) and (b) of Section 324A of the Restatement. (DE # 66 at 8.) Specifically, plaintiffs assert that defendant was obligated to do all of the following: (1) not allow U.S. Steel to ignore the seriousness of the Trestle's deterioration; (2) not allow U.S. Steel to use the Trestle without adhering to defendant's recommendations; (3) require that defendant no longer use the Trestle until repairs were completed; (4) request that U.S. steel allow defendant to finish the uncompleted general inspections; and (5) to make the Trestle safe. (*Id.* at 9-11.)

The Indiana Supreme Court recently addressed the assumed duty of care in *Yost v. Wabash College*:

> The assumption of such a duty requires affirmative, deliberate conduct such that *it is "apparent that the actor . . . specifically [undertook] to perform the task that he is charged with having performed negligently, 'for without the actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully.'* " *Lather v. Berg*, 519 N.E.2d 755, 766 (Ind.Ct.App.1988) (quoting *Blessing v. United States*, 447 F.Supp. 1160, 1188–89 (E.D.Pa.1978)), reh'g and trans. denied; see also *King v. Northeast Sec., Inc.*, 790 N.E.2d 474, 486–87 (Ind.2003) (quoting Lather ). Where "the record contains insufficient evidence to establish such a duty, the court will decide the issue as a matter of law."

3 N.E.3d 509, 517 (Ind. 2014) (emphasis added).

12

Defendant cites to *Yost* and argues that it had neither ownership nor control of the Trestle, and the specific undertaking that defendant assumed was defined by the contract. (DE # 67 at 3.) The court agrees that defendant owed no duty to plaintiff Aaron Sara. It is important to keep in mind what defendant actually contracted to do for U.S. Steel: perform a general inspection every five years and perform emergency inspections when necessary.[4] (DE # 64-2 at 1; Stanic Aff. at ¶ 2; DE # 66 at 3; DE # 66-1 at 48; Stanic Dep. at 45:13-22.) It is undisputed that defendant performed the initial general inspection of the Trestle in 1995, and asked U.S. Steel to allow it to do a detailed inspection of the Trestle after noting that the Trestle had "numerous deteriorated and cracked structural members." (DE # 66-1 at 61.) But U.S. Steel did not allow defendant to do a detailed inspection.

It is also undisputed that defendant performed another general inspection of the Trestle in 2000. After this inspection, defendant informed U.S. Steel that there were several areas of the Trestle that were inaccessible during the inspection, including the area that caused plaintiff Aaron Sara's injury in this case. Defendant again recommended that U.S. Steel allow defendant to do a detailed inspection of the Trestle, highlighting the areas that were not accessible during the general inspection. (*Id.*; DE # 64-3 at 15; Cornelius Dep. at p. 23:6-15.) U.S. Steel, however, would not allow defendant to do the suggested detailed inspection. The next general inspection of the

---

[4] Emergency inspections allowed defendant to inspect only the area identified in the emergency inspection work order. (DE # 68-2 at 5, 11.)

Trestle was scheduled for 2005. U.S. Steel canceled that inspection and did not allow defendant to perform the inspection. Defendant, however, continued to inform U.S. Steel that a detailed inspection was necessary. (DE # 66-1 at 39-40; Stannic Dep. at 24:6-25:3.)

There is no evidence that defendant failed to perform its requirements under its contract with U.S. Steel. There is no evidence that defendant undertook to perform any of the things that plaintiffs now claim defendant should have done. There is no evidence that defendant was acting "in lieu of" U.S. Steel with regard to making the Trestle safe. *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 744 (7th Cir. 1999) ("[I]t is also important that the party on whose behalf the duty is being undertaken relinquish control of the obligation; the party who adopts the duty must be acting '*in lieu of*' the original party." (citations and quotations omitted)). Without any such evidence, no reasonable jury could conclude that defendant assumed a duty of care to plaintiff Aaron Sara. *Yost*, 3 N.E.3d at 517.

Plaintiffs' arguments to the contrary are not persuasive. First, plaintiffs argue that defendant should not have allowed U.S. Steel "to ignore the seriousness of the deteriorated condition" of the Trestle. (DE # 66 at 9.) Defendant, however, performed its duties under the contract, and plaintiff has failed to direct the court to any evidence that defendant had the authority to make U.S. Steel take action regarding the Trestle's condition. Defendant performed the required general inspections under the contract, and requested permission to do detailed inspections. There is no evidence that

defendant had any authority to do anything more than it did, and no evidence that defendant's undertaking with regard to U.S. Steel involved defendant making U.S. Steel comply with defendant's recommendations.

Plaintiff next directs the court to the Seventh Circuit's opinion in *Hylin v. United States*. 715 F.2d 1206 (7th Cir. 1983); (DE # 66 at 10). In *Hylin*, the court stated, with regard to Restatement Section 324A(a):

> [I]t is quite clear from an examination of Section 324A and its commentary that liability may be imposed for a defendant's actions increasing the risk of harm, even though there is no evidence that defendant had assumed an employer's or proprietor's general duty of providing reasonably safe conditions to his employees or customers and no evidence that the employees or customers "relied" to their detriment on the defendant's provision of services.

*Id.* at 1211-12. The precedential value of *Hylin* is suspect, at best. First, the Seventh Circuit was interpreting Illinois law in its *Hylin* decision. *Id.* Additionally, the Supreme Court vacated the Seventh Circuit's decision in *Hylin*. *United States v. Hylin*, 469 U.S. 807 (1984).

But even assuming that the *Hylin* decision retains some precedential value, it does not actually help plaintiffs' case. In its discussion involving the quote above, the *Hylin* court was analyzing Section 324A(a), which is the "increased risk of harm" theory of Section 324A. As the *Hylin* court pointed out, that theory of liability is limited to defendants who have *increased* the risk of harm in some affirmative way: "The disjunctive regime of liability under Section 324A simply affords less protection to actors who, like the MESA inspectors here, positively intermeddle and create new

15

dangers, than to actors who, without some assumption of total responsibility, refrain from changing the status quo they observe." *Id.* at 1212.

There is nothing in the record that indicates defendant "positively intermeddle[d]" in some way that created new dangers on the Trestle. *Id.* The only evidence in front of the court indicates that defendant did not assume any duty to keep the Trestle safe and did not change the status quo of what it observed. *Id.* Thus, plaintiffs' argument regarding *Hylin* is unpersuasive.

Plaintiffs next direct the court to Comment d of Section 324A, which states, in part: "Even where the negligence of the actor does not create any new risk or increase an existing one, he is still subject to liability if, by his undertaking with the other, he has undertaken a duty which the other owes to the third person." Restatement (Second) of Torts § 324A (1965). Plaintiffs argue that under Section 324A defendant "assumed U.S. Steel's duty to provide reasonably safe conditions to U.S. Steel's employees, including [Aaron] Sara." (DE # 66 at 11.) As the court noted earlier, however, the assumed duty of care under Indiana law is defined by the specific undertaking of the actor. *Yost*. 3 N.E.3d at 517. And, as discussed above, there is no evidence that defendant affirmatively undertook the task of making the Trestle safe for U.S. Steel's employees. *Holtz*, 185 F.3d at 744. Plaintiffs' argument on this point therefore fails.

Plaintiffs next point out that one of defendant's engineers, Lee, became increasingly concerned about the condition of the Trestle, and noted that refusing to repair the Trestle was tantamount to "sitting on time bombs." (DE # 66 at 9.) While it is

16

true that Lee was concerned about the condition of the Trestle and made the "time bombs" comment, plaintiffs fail to point out that Lee expressed his concerns, including the "time bomb" comment, *directly to U.S. Steel*. (DE # 66-1 at 102.) Thus, Mr. Lee's concerns about the deterioration of the Trestle lend plaintiffs no support.

Next, plaintiffs argue that defendant should have assigned a repair category to the Trestle that would have prevented U.S. Steel from using the Trestle until the repair was completed. As the court noted earlier (*see supra* p. 2 n.1), however, there is not any evidence indicating that defendant had the authority to issue a recommendation that would require U.S. Steel to shut down or not use the Trestle. Simply put, defendant had neither ownership nor control over the Trestle. *Ebbinghouse v. FirstFleet, Inc.*, 693 N.E.2d 644, 647-48 (Ind. Ct. App. 1998) ("Absent evidence that FirstFleet exercised any control over the instrumentality that caused Ebbinghouse's injury, Ebbinghouse has failed to show that a relationship existed between FirstFleet and Ebbinghouse which would support a duty on the part of FirstFleet to conform its conduct to a certain standard for the benefit of Ebbinghouse under the factual circumstances presented here."); *Downs v. Panhandle E. Pipeline Co.*, 694 N.E.2d 1198, 1204 (Ind. Ct. App. 1998) ("Therefore, because the Appellees had neither ownership nor control of the defective pipe from which the gas escaped or any other part of the Montezuma system, we hold that there is no relationship between the Appellees and the Downs that would impose a duty upon them to insure that Montezuma's distribution system was safe."), *abrogation on other grounds recognized in City of Gary ex rel. King v. Smith & Wesson Corp.*, 776 N.E.2d 368, 385

n.13 (Ind. Ct. App. 2002) transfer granted, opinion vacated sub nom. *City of Gary v. Smith & Wesson Corp.*, 792 N.E.2d 36 (Ind. 2003) and vacated, 801 N.E.2d 1222 (Ind. 2003).

Next, plaintiffs direct the court to the testimony of their expert, Peter Engelbert. (DE # 66 at 9.) Plaintiffs specifically note that Engelbert testified that defendant breached its duty to inspect the trestle by failing to recognize dangerous conditions and by failing to provide U.S. Steel with a recommended corrosion protection/prevention plan for the Trestle. (*Id.*) As defendant correctly points out (DE # 67 at 7), an expert's legal conclusions are inadmissible. *Good Shepherd Manor Found., Inc. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003) ("The district court correctly ruled that expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible."); *Vaughn v. Daniels Co. (W. Virginia)*, 841 N.E.2d 1133, 1137 (Ind. 2006); *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1372 (Ind. 1992) ("Whether a particular act or omission is a breach of a duty is generally a question of fact."); *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1263 (Ind. Ct. App. 2002) ("[W]e have held that an expert witness was not permitted to testify that the defendant was responsible for a defective condition and owed the plaintiffs a duty.") Plaintiffs' expert's testimony, therefore, lends them no support.

Even if the expert's legal conclusions were admissible, however, they would still not help plaintiffs. The first of Engelbert's conclusions that plaintiffs direct the court to is that defendant breached its duty to inspect by failing to recognize dangerous

conditions on the Trestle. This does not take into account that prior to plaintiff Aaron Sara's accident, *defendant had never been given access to the area of the Trestle where plaintiff's accident occurred*. (DE # 64-2 at 2; Stanic Aff. at ¶¶ 9-11.) Defendant requested that U.S. Steel allow it to perform detailed inspections, and highlighted the areas that defendant could not access during the general inspection. (DE # 64-3 at 51; DE # 64-3 at 15; Cornelius Dep. at p. 23:6-15.) But U.S. Steel never made the area where Aaron Sara's accident occurred accessible to defendant.

The second of Engelbert's conclusions that plaintiffs direct the court to is that defendant breached its duty to inspect by failing to recommend a corrosion protection/prevention plan for the Trestle. (DE # 66 at 9.) As defendant correctly points out, however, there is nothing in the record to support this legal conclusion. (DE # 67 at 8.) In fact, the only evidence on this issue indicates that defendant was not expected to suggest a corrosion protection/prevention plan for the Trestle. (DE # 68-2 at 14-15; Stanic Dep. at pp. 57:8-58:12; DE # 68-1 at 10; Cornelius Dep. at p. 55:14-25.) Plaintiffs' argument on this point fails.[5]

Plaintiff Aaron Sara has failed to raise a genuine issue of material fact as to his negligence claim. No reasonable jury could conclude that defendant owed Sara a duty

---

[5] Plaintiffs also assert that Engelbert concluded that defendant had violated The Indiana Occupational Safety and Health Administration (IOSHA). (DE # 66 at 6.) Plaintiffs go on to admit, however, that IOSHA does not provide a private cause of action. (*Id.* at 11.) In any event, plaintiffs have not developed their IOSHA argument, and it is therefore waived. *See Perez v. Illinois*, 488 F.3d 773, 776-77 (7th Cir. 2007) (stating that "perfunctory and undeveloped arguments are deemed waived").

19

to make the Trestle safe or take any of the other actions Sara suggests defendant should have taken. Summary judgment in defendant's favor on plaintiff Aaron Sara's negligence claim is therefore appropriate. Because summary judgment is proper on Aaron Sara's underlying negligence claim, summary judgment is also appropriate on Julie Sara's loss of consortium claim. *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014), reh'g denied (Aug. 15, 2014), transfer denied sub nom. *Miller v. Cent. Indiana Cmty. Found., Inc.*, 26 N.E.3d 612 (Ind. 2015).

## IV. Conclusion

For the foregoing reasons, defendant Globex Corporation's motion for summary judgment on plaintiffs Aaron and Julie Sara's claims (DE # 64) is **GRANTED**. There being no claims remaining against defendant in this case, the clerk is directed to **ENTER FINAL JUDGMENT** as follows:

> Judgment is entered in favor of defendant Globex Corporation, and against plaintiffs Aaron and Julie Sara, who shall take nothing by way of their complaint.

**SO ORDERED.**

Date: September 14, 2015

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT